**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**


DAVID D. CLIFFORD (#109543)                          CIVIL ACTION
a/k/a MICHAEL J. COLEMAN

VERSUS

JAMES LeBLANC, ET AL.                                NO. 09-0105-FJP-CN


## NOTICE

     Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

     In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

     ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

     Signed in chambers in Baton Rouge, Louisiana, February 3, 2010.


_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

DAVID D. CLIFFORD (#109543)                    CIVIL ACTION
a/k/a MICHAEL J. COLEMAN

VERSUS

JAMES LeBLANC, ET AL.                          NO. 09-0105-FJP-CN

<u>**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

This matter comes before the Court on the defendants' Motions to Dismiss, rec.doc.nos. 16 and 29.  These motions are opposed.

The pro se plaintiff, an inmate previously incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Secretary James M. LeBlanc, former Secretary Richard Stalder, Warden Nathan "Burl" Cain, Ass't. Warden Mack Shaw, Ass't. Warden Blaine Lachney, Ass't. Warden Tim Delaney, Dr. Raman Singh, Dr. Jonathan Roundtree, LSP Pharmacy Worker Mary Labatut (identified in the plaintiff's Amended Complaint as "Ms. Mary in the Pharmacy"), an LSP Pharmacy Worker identified in the plaintiff's Amended Complaint only as "Stacy in the Pharmacy", and certain unidentified "John Doe" and "Jane Doe" defendants at LSP, alleging that the defendants have violated his constitutional rights through deliberate indifference to his serious medical needs.[1]

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a Complaint is subject to dismissal if a

---

[1]     Inasmuch as "Stacy in the Pharmacy" and the "John Doe" and "Jane Doe" defendants have not been properly identified or served, the Court will not consider these persons to be defendants in this proceeding.  Further, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, these defendants would be subject to dismissal for failure of the plaintiff to effect service upon them within 120 days of the filing of his Complaint.

plaintiff fails "to state a claim upon which relief can be granted."  In Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and more recently, in Ashcroft v. Iqbal,___ U.S. ___, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6).  The Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]" Bell Atl. Corp. v. Twombly, supra, quoting Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  See also Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Notwithstanding, although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or the" formulaic recitation of the elements of a cause of action" in order to provide the "grounds" of "entitle[ment] to relief." Bell Atl. Corp. v. Twombly, supra.  See also Papasan v. Allain, 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).  The Court stated that there is no "probability requirement at the pleading stage," Bell Atl. Corp. v. Twombly, supra, but "something beyond ... mere possibility ... must be alleged." Id. The facts alleged in the Complaint "must be enough to raise a right to relief above the speculative level," or must be sufficient "to state a claim for relief that is plausible on its face," Id. (abandoning the "no set of facts" language set forth in Conley v. Gibson, supra).  A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, supra.  Where a

Complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." Id.

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." Erickson v. Pardus, supra. See also Bell Atl. Corp. v. Twombly, supra. Further, "[a] document filed pro se is to be liberally construed ... and a pro se Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, supra (citations omitted).

In his Complaint, as amended, the plaintiff alleges that he arrived at LSP on March 5, 2007, having been transferred from Phelps Correctional Center in DeQuincy, Louisiana. The plaintiff complains that upon arrival at LSP, he was not seen by a licensed physician within 72 hours as mandated by prison rules, and his prescribed medication, Neurontin, was discontinued without notice and was never provided to him. In addition, the plaintiff complains that on multiple occasions after his arrival at LSP, a prescribed pain medication, Ibuprofen 800 mg. (identified in an Amended Complaint as "Motrin 800 mg."), as well as other medications, were unavailable for periods of up to two weeks at a time. The plaintiff asserts that he suffers with herniated discs at three levels in his lower back, as well as degenerative disc disease, and that he suffered great pain when his prescribed medications were not provided. Finally, the plaintiff complains of the manner in which inmates were provided with medication at LSP, with pill-call officers delivering medications to the inmates' tier but with tier security officers thereafter distributing the medication to inmates on the tier. The plaintiff asserts that the security officers and sick-call officers were often unable or unwilling

to respond to complaints about medication, deferring same to the pill-call personnel, that the tier security officers often forged inmates' names or prevented inmates from signing the forms reflecting receipt of medication, and that the tier security officers sometimes "borrowed" doses of the plaintiff's medication to give to other inmates with the same or similar prescriptions, or confiscated doses of the plaintiff's medication for their own use, causing the medication to run out early. The plaintiff also complains that he was unreasonably charged a $3.00 "medical access fee" for visits to the prison infirmary and a $2.00 "prescription fee" for medicines, some of which were not even provided to him.

In response to the plaintiff's allegations, the defendants first contend that the plaintiff is precluded from bringing this action by virtue of the Eleventh Amendment to the United States Constitution, which Amendment prohibits the bringing of a lawsuit in federal court against a state, its agencies or persons acting as official representatives thereof.  However, whereas the defendants are correct that this Amendment precludes the bringing of a lawsuit seeking monetary damages against the defendants in their official or representative capacities under § 1983, the plaintiff has named most of the defendants in only their individual capacities, which presents a different issue.[2]

_____

[2]     Only defendants James LeBlanc, Richard Stalder and Burl Cain are named in their official capacities in connection with the plaintiff's claim for declaratory and injunctive relief.  However, it is unnecessary for the Court to address the defendants' arguments regarding the official-capacity claims asserted against these defendants because the plaintiff has been transferred from the custody of LSP, and his request for declaratory and injunctive relief is now moot.  See Herman v. Holiday, 238 F.3d 660 (5th Cir. 2001)(even if the plaintiff established an Eighth Amendment violation, his transfer from the offending institution rendered his claims for declaratory and injunctive relief moot), citing Cooper v. Sheriff, Lubbock County, Tex., supra; Bailey v. Southerland, 821

The distinction between personal and official capacity suits has been addressed by the United States Supreme Court in Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).  In Hafer, the Court made clear that a suit against a state official in his official or representative capacity for monetary damages is treated as a suit against the state and is barred by the Eleventh Amendment.  Id.  Notwithstanding, a suit against a state official in his personal or individual capacity seeks to impose individual liability upon a government official for actions taken by the official under color of state law.  Therefore, a showing by the plaintiff that a state official, acting individually and under color of state law, caused the deprivation of the plaintiff's constitutional rights, is enough to establish personal liability in a § 1983 lawsuit.  Id.  Accordingly, it is clear that the plaintiff in this case states a claim for recover of monetary damages against the defendants insofar as the defendants are sued in their individual capacities for actions taken by them which have caused the alleged deprivation of the plaintiff's constitutional rights.

Turning to a substantive review of the plaintiff's claims asserted against the defendants in their individual capacities, the defendants next assert, in response to the plaintiff's allegations, that they are entitled to qualified immunity in connection with the plaintiff's claims made against them.  Specifically, the defendants contend that the plaintiff has failed to make sufficient allegations of conduct on their part which rises to the level of a violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing

---

F.2d 277 (5th Cir. 1987).

discretionary tasks.  Hale v. Townley, 45 F.3d 914 (5th Cir. 1995).  As enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights.  Second, the district court looks to whether the rights allegedly violated were clearly established.  This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.  The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.  Id.  In the instant case, the defendants assert that the plaintiff's claim fails in the first instance because he has failed to allege facts in the Complaint which would support a finding that they participated in any violation of his constitutional rights.[3]

Undertaking the Saucier analysis, the Court concludes that the defendants' motions are well-taken and that they are entitled to qualified immunity in connection with the plaintiff's claims.

The Eighth Amendment to the United States Constitution prohibits the wanton infliction of pain.  Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  However, in order to state a claim under the Eighth Amendment of improper or inadequate attention to medical needs,

---

[3]     The United States Supreme Court has recently held that rigid chronological adherence to the Saucier two-step methodology is no longer mandatory.  Pearson v. Callahan, ____ U.S. ____, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Although the    Saucier methodology will be "often beneficial", the Callahan Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

a prisoner must assert both that appropriate care was denied and that the denial constituted "deliberate indifference to serious medical needs." Estelle v. Gamble, supra; Johnson v. Treen, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff received the treatment or accommodation that he feels he should have is not the issue. Estelle v. Gamble, supra; Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); Johnson v. Treen, supra. Rather, as stated in Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

In addition, pursuant to well-settled legal principles, in order for a defendant to be found liable under § 1983, he must either have been personally involved in the actions causing the alleged deprivation of the plaintiff's constitutional rights, or there must be a causal connection between the actions of the defendant and the constitutional violation sought to be redressed. Lozano v. Smith, 718 F.2d 756 (5th Cir. 1983). Any allegation that the defendants are responsible for the actions of their subordinates or co-employees is insufficient to state a claim under § 1983. Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, the plaintiff must allege that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty

specifically imposed upon him by state law.  Lozano v. Smith, supra.

Applying the above standard, the Court concludes that, with regard to all of the defendants save one, the plaintiff has alleged only supervisory liability on the part of the defendants in this case. Specifically, the plaintiff has alleged that defendants LeBlanc and Stalder (as the Secretary and former Secretary of the Louisiana Department of Public Safety and Corrections, respectively) had a generalized duty "to provide adequate medical care to state prisoners", that defendant Cain (as the Head Warden at LSP) had a duty to "see that all staff under his supervision follow federal/state laws and Departmental Regulations concerning medication/medical care", that defendants Shaw, Delaney and Lachney (as Assistant Wardens at LSP) were "responsible for the supervision of employees under [their] control", and that defendants Singh and Roundtree (as the Medical Director and former Medical Director at LSP, respectively) had a generalized duty to ensure that inmates received appropriate medications and medical care, to ensure that laws and regulations were complied with, and to supervise employees assigned to providing inmates' medical care.  In addition, the plaintiff asserts that the defendants had a duty to rectify the plaintiff's complaints once they were made aware of same through the plaintiff's letters and administrative grievances.  The plaintiff makes no allegation, however, that any of these defendants were personally involved in providing him with medical care, in prescribing him medication, or in allegedly denying him receipt of prescribed medication.[4]

---

[4]   Although the plaintiff asserts that defendant Singh is personally responsible for the discontinuance of the plaintiff's prescribed Neurontin in March, 2007, it is clear that this claim is barred by the applicable statute of limitations.  In this regard, it is well settled that in §1983 cases, federal courts look to the most consonant statute of limitations of the forum state.  Owens v.

Rather, the plaintiff effectively concedes that there were numerous subordinate employees, including physicians, nurses, medical technicians, pill-call officers, tier security officers, and pharmacists, who were themselves charged with direct and personal responsibility for providing the plaintiff with prescribed medications, none of which subordinate employees have been named as defendants in this proceeding (with the exception of pharmacist Mary Labatut, addressed infra). Accordingly, the Court interprets the plaintiff's allegations as asserting claims only against supervisory officials for whom there can be no liability under § 1983. Accordingly, these defendants are entitled to dismissal of the plaintiff's claims against them.

This conclusion is not altered by the plaintiff's assertion that he provided actual notice to the defendants of his complaints, through correspondence, through administrative grievances, and through verbal complaints to individual security officers in person or on the cell tier. In this regard, the law is clear that the plaintiff has no constitutional right to have his complaints or grievances addressed, investigated, or favorably resolved by prison officials. Moreover, there is no procedural due process right inherent in such a claim. As stated by the United States Court of Appeals for the Fifth Circuit in Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005):

---

Okure, 488 U.S. 235, 109 S.Ct. 573 (1989); Kitrell v. City of Rockwall, 526 F.2d 715, 716 (5th Cir.), cert. denied, 426 U.S. 925, 96 S.Ct. 2636 (1976). For §1983 cases brought in Louisiana federal courts, the appropriate limitations period is one year. Louisiana Civil Code Article 3492; Elzy v. Roberson, 868 F.2d 793 (5th Cir. 1989); Washington v. Breaux , 782 F.2d 553 (5th Cir. 1986); Kissinger v. Foti, 544 F.2d 1257, 1258 (5th Cir. 1977). Inasmuch as the plaintiff filed this proceeding in February, 2009, therefore, his claim relative to alleged actions by defendant Singh in March, 2007, for which the plaintiff filed an administrative grievance procedure which was completed in August, 2007, is prescribed.

> Insofar as [the plaintiff] seeks relief regarding an alleged
> violation of his due process rights resulting from the prison
> grievance procedures, the district court did not err in dismissing
> his claim as frivolous.... [The plaintiff] does not have a federally
> protected liberty interest in having these grievances resolved to
> his satisfaction.  As he relies on a legally nonexistent interest,
> any alleged due process violation arising from the alleged failure
> to investigate his grievances is indisputably meritless.

Accordingly, the plaintiff's claim regarding the alleged failure of the
defendants to properly address, investigate or respond to his complaints
and administrative grievances regarding his medication is without legal
foundation.

In addition to the foregoing, the plaintiff also asserts a complaint
relative to an alleged wrongful policy at LSP, pursuant to which, he
contends, inmates are not assured of their receipt of appropriate
medications and are charged for expenses associated with their treatment
and medications at the prison.  In this regard, the plaintiff asserts
that pill-call officers, who bring the inmates' medication to the cell
tiers, do not themselves provide medications to the inmates but instead
merely provide the medication to the tier security officers who
distribute the medications on the tier.  As a result, the plaintiff
complains that he is not allowed to voice complaints to the individual
pill-call officers.  In addition, the plaintiff asserts that sometimes
security officers fail to provide the prescribed medications to inmates
and, instead, keep them for themselves or "borrow" medications from one
inmate to distribute to other inmates, falsely initialing on the receipt-
of-medicine form to reflect an inmate's receipt of the pertinent
medication.

The plaintiff's allegations fail to support a conclusion that any
supervisory defendant was responsible for implementation of an
unconstitutional policy.  In this regard, supervisory liability may be
found to exist only when a policy is so deficient that the policy itself

is a repudiation of constitutional rights, as when a policy exists which the defendant supervisors <u>know</u> will "expose prisoners to a substantial risk of significantly unmet serious medical needs." <u>Thompkins v. Belt</u>, 828 F.2d 298 (5th Cir. 1987). The plaintiff's extensive factual allegations reflect, however, that the prison has in place a procedure pursuant to which inmates are routinely seen by health care personnel (as was the plaintiff), are referred to see physicians when deemed appropriate (as was the plaintiff), and are examined and prescribed medications by such physicians as deemed warranted for their conditions (as was the plaintiff). The prescriptions for inmates' medications are handled by pharmacists employed by the prison, are filled and re-filled, and are delivered to the inmates' tiers by pill call officers who provide the medications to the tier security officers for actual dispensing to the inmates. In addition, daily visits are made to the inmates' tiers by medical technicians assigned to sick-call duty, who are themselves authorized to attend to inmates' acute complaints and to take appropriate action in response to these complaints. Although the plaintiff complains of periodic breakdowns in the implementation of these procedures, either through occasional negligent failures by prison personnel to renew prescriptions, through wrongful conduct on the part of individual employees in taking or "borrowing" medications, or through lapses in the actual delivery of prescribed medications, these sporadic and episodic breakdowns do not lead to a conclusion that the policy itself was a repudiation of constitutional rights or exposed defendants to "a substantial risk of significantly unmet serious medical needs", of which the supervisory defendants were subjectively aware. <u>Thompkins v. Belt</u>, <u>supra</u>. To the contrary, attachments to the plaintiff's pleadings reflect that he received a great deal of medical attention while housed at LSP

and was prescribed substantial quantities of medication deemed appropriate for his condition. Supervisory liability based upon an alleged unconstitutional policy may not be found where the system has only failed in isolated instances and cannot be inferred from isolated single wrongful act. Id. Accordingly, the Court finds that the plaintiff's assertions of supervisory liability in the instant case are unfounded and insupportable.

In addition to the foregoing, the plaintiff also makes assertions relative to one identified pharmacy worker, Mary Labatut, who the plaintiff alleges personally failed to fill or refill the plaintiff's prescriptions on multiple occasions. The plaintiff makes no assertion, however, that such failures were intentional and, instead, asserts only that the defendant "committed negligent acts under state tort law". This allegation fails to rise to the level of a constitutional violation. The law is clear that negligence is not a basis for liability under § 1983. Oliver v. Collins, 904 F.2d 278, 281 (5th Cir. 1990); Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987). Further, the plaintiff alleges in wholly conclusory fashion that, "[i]t is believed this defendant has issued a number of stop orders directly to the distribution officers without the knowledge or consent of the prescribing physicians" and, "[i]f this belief is substantiated through pharmacy records, such interference ... constitutes malfeasance in office". This assertion is entirely conclusory and is not supported by any factual basis for the plaintiff's uncorroborated "belief". To the contrary, responses to the plaintiff's administrative grievances, which he attached to his pleadings, reflect that when he complained to medical personnel of purported stop orders, inquiries were made by such personnel, and they repeatedly confirmed to the plaintiff that no stop orders had in fact

been issued (see response to LSP-2007-3666, attachment to rec.doc.no. 23).  Accordingly, there is no basis for the plaintiff's assertion that the sporadic and episodic failures by defendant Labatut to provide him with prescribed medications were anything more than mere negligence on the part of this defendant or other LSP health care workers, and the plaintiff's claim against this defendant should be dismissed.

Finally, the defendants seek dismissal of the plaintiff's state law claims asserted in this proceeding.  In this regard, contrary to the defendants' assertion that the Eleventh Amendment prohibits the Court from entertaining these claims, the law is clear that a federal district court is allowed to entertain supplemental jurisdiction over a plaintiff's state law claims if the state law claims are so related to the federal claims as to form part of the same case or controversy.  28 U.S.C. § 1367.  Notwithstanding, a district court also has discretion to decline to exercise such jurisdiction if the claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367(c).  In the instant case, the Court concludes that it is appropriate for the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claims.

## RECOMMENDATION

It is recommended that the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claims.  It is further recommended that the defendants' Motions to Dismiss, rec.doc.nos. 16 and 29, be granted, dismissing the plaintiff's claims on the basis of qualified immunity, and that this action be dismissed.

Signed in chambers in Baton Rouge, Louisiana, February 3, 2010.

_____

**MAGISTRATE JUDGE CHRISTINE NOLAND**